1  WILLARD K. TOM
2  General Counsel

3  GREGORY A. ASHE
4  LISA A. ROTHFARB
   JASON M. ADLER
5  Federal Trade Commission
6  600 Pennsylvania Ave., N.W.
   Washington, D.C. 20580
7  Telephone: 202-326-3719 (Ashe)
8  Telephone: 202-326-2602 (Rothfarb)
   Telephone: 202-326-3231 (Adler)
9  Facsimile: 202-326-3768
10 Email: gashe@ftc.gov, lrothfarb@ftc.gov, jadler@ftc.gov

11 RAYMOND E. MCKOWN (CA Bar No. 150975)
12 Federal Trade Commission
13 10877 Wilshire Blvd, Suite 700
   Los Angeles, CA 90024
14 Telephone: 310-824-4325
15 Facsimile: 310-824-4380
   Email: rmckown@ftc.gov
16

17 Attorneys for Plaintiff

18                  UNITED STATES DISTRICT COURT
19                  CENTRAL DISTRICT OF CALIFORNIA

20

21 FEDERAL TRADE COMMISSION,

22        Plaintiff,                      Case No.    SACV12 - 1504 JST (JPRx)

23              v.

24                                        COMPLAINT FOR PERMANENT
25 NELSON GAMBLE &                        INJUNCTION AND OTHER
   ASSOCIATES LLC, also d/b/a             EQUITABLE RELIEF
26 Nelson Gamble & Associates, P.C.
   and Nelson Parker Gamble &
27 Banks, LLP,
28

                                    1

1
2  **JACKSON HUNTER MORRIS & KNIGHT LLP**,

3
4  **BLACKROCK PROFESSIONAL CORPORATION**,

5
6  **MEKHIA CAPITAL, LLC**,

7  and

8  **JEREMY R. NELSON**,

9
10     Defendants.

11     Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

12
13     1.     The FTC brings this action under Sections 13(b) and 19 of the Federal

14  Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the

15  Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing

16
17  Act"), 15 U.S.C. § 6101 *et seq.*, and Section 917(c) of the Electronic Fund Transfer

18  Act ("EFTA"), 15 U.S.C. § 1693o(c), to obtain temporary, preliminary, and

19
20  permanent injunctive relief, rescission or reformation of contracts, restitution, the

21  refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief

22  for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15

23
24  U.S.C. § 45(a); the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310;

25  Section 907(a) of EFTA, 15 U.S.C. § 1693e(a); and Section 205.10(b) of

26  Regulation E, 12 C.F.R. § 205.10(b), in connection with the marketing and sale of

27
28  debt relief services.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), 6105(b), and 1693o(c).

3.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. § 41 *et seq.* The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC enforces the Telemarketing Act, 15 U.S.C. § 6101 *et seq.* Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive or abusive telemarketing acts or practices. The FTC also enforces the EFTA, 15 U.S.C. § 1693 *et seq.*, which regulates the rights, liabilities, and responsibilities of participants in electronic funds transfer systems.

5.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, the TSR, the EFTA, and Regulation E, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of

3

monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57b, 6102(c), 6105(b), and 1693o(c).

## DEFENDANTS

6. Defendant Nelson Gamble & Associates LLC ("Nelson Gamble") is a Colorado corporation with its principal place of business at 30221 Aventura, 2nd Floor, Rancho Santa Margarita, California. Nelson Gamble also maintains a mailing address at 18101 Von Karman Avenue, 3rd Floor, Irvine, California. Nelson Gamble transacts or has transacted business in this district and throughout the United States. At times material to this Complaint, acting alone or in concert with others, Nelson Gamble has advertised, marketed, distributed, or sold debt relief services to consumers throughout the United States.

7. Defendant Jackson Hunter Morris & Knight LLC ("Jackson Hunter") is a Nevada corporation with its principal place of business at 30221 Aventura, 2nd Floor, Rancho Santa Margarita, California. Jackson Hunter also maintains a mailing address at 620 Newport Center Drive, Suite 1100, Newport Beach, California. Jackson Hunter transacts or has transacted business in this district and throughout the United States. At times material to this Complaint, acting alone or in concert with others, Jackson Hunter has advertised, marketed, distributed, or sold debt relief services to consumers throughout the United States.

4

8. Defendant BlackRock Professional Corporation ("BlackRock") is a Colorado professional corporation. BlackRock maintains a mailing address at 8880 Rio San Diego Drive, Suite 800, San Diego, California. BlackRock transacts or has transacted business in this district and throughout the United States. At times material to this Complaint, acting alone or in concert with others, BlackRock has advertised, marketed, distributed, or sold debt relief services to consumers throughout the United States.

9. Defendant Mekhia Capital LLC ("Mekhia Capital") is a California limited liability company with its principal place of business at 30221 Aventura, 2nd Floor, Rancho Santa Margarita, California. Mekhia Capital's registered office is 250 North Golden Circle, Suite 109, Santa Ana, California. Mekhia Capital transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Mekhia Capital has advertised, marketed, distributed, or sold debt relief services to consumers throughout the United States.

10. Defendant Jeremy R. Nelson ("Nelson") is a principal and officer of Nelson Gamble, Jackson Hunter, BlackRock, and Mekhia Capital. Nelson manages and oversees Defendants' day-to-day operations. Nelson has signatory authority over Defendants' bank accounts. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had

5

the authority to control, or participated in the acts and practices set forth in this Complaint. Nelson resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

11. Defendants Nelson Gamble, Jackson Hunter, BlackRock and Mekhia Capital (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the unlawful acts and practices alleged below. Defendants have conducted the business practices described below through interrelated companies that have common ownership, officers, managers, business functions, employees, and office locations, and have commingled funds. Because the Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendant Nelson has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise. Defendant Nelson regularly oversees the transfer of funds among the corporate defendants and between the corporate defendants and other entities controlled by him or his personal accounts.

6

## COMMERCE

12.    At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

13.    Since at least 2009, Defendants have solicited consumers who seek debt relief services through the Internet and telemarketing.  Defendants induce consumers to purchase their services with representations that Defendants will reduce consumers' unsecured debt by 50% or more.  In the course of their telemarketing, Defendants routinely call consumers on the FTC's Do Not Call list. In addition, in numerous instances, Defendants make unauthorized charges to consumers' bank accounts.

### Defendants' Internet Marketing Activities

14.    Defendants have solicited consumers who seek debt relief services through a number of Internet websites.  Since at least January 2009, Defendants have operated several websites, including but not limited to the following: nelsongamble.com, nelsongamble.org, nelsongamble.net, nelsongamble.info, jhmklaw.com, jhmklaw.org, jhmklaw.net, jhmkllp.com, jhmkllp.net, blackrocklaw.com, mekhiacapital.com, checkmatedebt.info, checkmatedebt.org, checkmatedebt.com, checkmatedebtsolutions.com, checkmatedebt.net, drlgpc.com,

7

and drlgpa.com. Defendant Nelson is the registrant for these websites. The
domain registration and hosting fees for many of these websites are paid for by
Defendant Nelson.

15.   Defendants' nelsongamble.com website makes the following
statements regarding their ability to reduce consumers' unsecured debt:

a.   **When it comes to Debt Settlement, not all companies are the
same.**

At Nelson Gamble & Associates, we take great pride in offering
our client's [sic] the most affordable and effective form of relief
from their unsecured debts. Our business model is based on the
premise that all clients be completely satisfied while providing
them the following in expectations:

• SAVINGS amounting to Hundreds of Dollars a month;

• BENEFIT of having only one effortless monthly
payment;

• DEBT FREE usually in three years or less;

• REDUCTION of your principal balance by up to 80%;

• FLEXIBLE program guidelines absent of Credit History
or Home Ownership Requirements.

8

b. **Nelson Gamble works with the utmost of diligence to obtain the best possible outcome for our clients, with over \$90 million of debt settled in the past 12 months – and over \$800 million since our inception.  Nelson Gamble & Associates offers a proven debt settlement process** which has helped thousands of people eliminate their debt while avoiding bankruptcy or lengthy debt consolidation programs.  We take the hassle out of debt settlement by working directly with your creditors and collection agencies to settle your debt for a fraction of what you owe, providing you with peace of mind.

c. **Nelson Gamble & Associates employs proven tactical methods to settle debt** by 50% to 80% of your total outstanding balances.  Our process is extremely effective and has helped nearly seventy thousand people resolve their unsecured debts.

d. **Typically, you can be free from debt in three years or less**.

e. Typically, we attempt to reduce your debts by at least 60% of the originally enrolled balance of the debt.

f. Nelson Gamble may SETTLE YOUR DEBTS in as little as 12-36 months.

9

16.     Defendants' jhmklaw.com and jhmklaw.org websites (which are

substantially similar) make the following statements regarding their ability to

reduce consumers' unsecured debt:

    a.    Highlights:

- Over one billion dollars of unsecured debt under management

- Record breaking history cutting clients[sic] debt by more than half of their total debt

- Management Team with a combined total of over 75 years of experience in the debt reduction industry

- $1 million Fidelity Bond

- $100,000 Surety Bond

    b.    Once your evaluation is complete, we work with you to design an action plan developed to have your unsecured debt paid off in approximately 1-3 years with an affordable monthly payment that works within your budget. Together we will determine the appropriate monthly dollar amount that you will allocate towards your program. Your personalized plan will typically be structured to give you immediate relief from your current monthly payments. Our firm will immediately contact your

10

creditors to advise them that we are representing you, and of

our intention with regards to your account.

    c.    Typically we attempt to reduce your debts by at least 50% of

your original balances.

17.    Defendants' blackrocklaw.com website makes the following

statements regarding their ability to reduce consumers' unsecured debt:

    a.    BlackRock Professional Corporation is committed to remaining

one of the largest providers of Consumer and Business Debt

related Legal Services in the nation by:

- Providing world-class customer service and support;

- Leveraging its size, experience and proven track record

to ensure our Clients achieve the greatest savings

possible for each and every debt enrolled;

- Providing solid financial guidance, education, innovative

tools and resources to each and every Client;

- Paving the roadway to debt free and stress free living for

each and every Client

    b.    Corporate Highlights:

- Over one billion dollars of unsecured debt under

management

11

- Record breaking history cutting clients debt by more than half of their total debt
- Management Team with a combined total of over 75 years of experience in the debt reduction industry

c.  Typically we attempt to reduce your debts by at least 50% of your original balances

d.  Business Debt Settlement Services:

- Payment Reductions of up to 85%
- At Black Rock Law, while working within your company's available budget, we negotiate on your behalf to achieve payment reductions, extended payouts and discounted debt settlements with your company's creditors, suppliers and vendors or the collection agencies and attorneys who represent them.
- In fact, the typical savings we've consistently provided clients average savings of 74% and often up to 85% (plus, your payments are interest-free). Best of all, our corporate debt negotiation services are most often provided on a risk-free, results-only basis.

12

- For nearly eighty years, our clients have been afforded settlements that regularly average $.26 cents on the dollar, and frequently less. We guarantee your satisfaction – and we never lock you or your company into any unreasonable or one-way agreements.

18.    Defendants tout their experience to further their claim that they will reduce consumers' debt, including by claiming to be a law firm or to have lawyers on staff. For example, Defendants use names such as "Nelson Gamble & Associates," "Jackson, Hunter, Morris & Knight LLP," "Debt Relief Law Group P.C.," "BlackRock Professional Corporation," and "blackrocklaw.com" that mimic those of law firms. Defendants' websites further state:

a.    Why not be represented by a team of legal professionals? **Our team of Legal Professionals will work with you every step of the way** to custom tailor a program that fits within your budget as well as your overall financial situation.... *A Certified Debt Specialist from our legal team will discuss with you the options available and work with you to formulate a program that will lower your current monthly burden and convert it into one single monthly payment!* (emphasis in original)

13

b.   *With our attorney's [sic] at your side, our years of experience and our proven negotiating tactics; You're sure to come out on Top!* (emphasis in original)

c.   Our team of Attorney's [sic], Certified Debt Specialists, and Negotiators are dedicated to helping you settle your outstanding debt by helping you make informed choices.

d.   Our services and attorneys have been featured on: Fox News, CBS, ABC, MSNBC, NBC, ESPN, and Fox.

e.   BlackRock Professional Corporation is committed to remaining one of the largest providers of Consumer and Business Debt related Legal Services in the nation[.]

19.    Defendants' websites display charts that contain various settlement examples Defendants have purportedly achieved for their clients with the heading: "Please review a few of our recent settlements to see the results of our past performance." The chart displays information about the settlements including the creditor involved, the debt balance, the settlement achieved, the amount of money saved, and the percentage of the debt balance saved. For example, one purported settlement displayed on the chart shows a credit card debt of $10,277.31 that was purportedly settled for $1,325.00, for a savings of $8,952.31, or 87.11%. The settlement examples in the chart portray savings of between 50.01% and 89.94%.

14

In addition, Defendants' websites attach a number of documents that purport to be letters from creditors to Defendants' clients that confirm settlement agreements and describe the amount of debt, the settlement amount, and the schedule for payment of the settled amount.

20.     Defendants' websites invite consumers to call one of several toll-free telephone numbers — 888-835-4465 (on the nelsongamble.com website), 888-328-5530 and 800-676-9940 (on the jhmklaw.com and jhmklaw.org websites), and 866- 815-2995 (on the blackrocklaw.com website).

21.     Defendants' toll-free numbers are registered to Defendant Nelson, with Nelson being listed as the contact person and his personal address as the contact address.

## Defendants' Telemarketing Activities

22.     In addition to responding to inbound calls from consumers visiting one of Defendants' websites, Defendants engage in outbound telemarketing to offer their debt relief services. Defendants' outbound telemarketing campaign consists of three phases: a robocall, a prequalification sales pitch, and an enrollment sales pitch.

## The Robocall

23.     In numerous instances, when consumers answer the telemarketing calls, Defendants, or intermediaries acting on behalf of Defendants, do not connect

15

the call to a live sales representative, but play prerecorded messages, known as "voice broadcasting" or "robocalling." In numerous instances, the prerecorded messages tell consumers that they are a "public service announcement" and that President Obama wants to help consumers get out of debt and can settle their debts for 50% or less of what consumers owe. The prerecorded messages typically instruct consumers to press 1 on their phone if they would like to hear more.

24. To induce the purchase of Defendants' goods or services, Defendants, directly or through their agents or intermediaries, have made numerous calls to telephone numbers on the National Do Not Call Registry ("Registry"). Defendant Nelson has instructed Defendants to call consumers on the Registry on a regular basis.

25. To induce the purchase of Defendants' goods or services, Defendants, directly or through their agents or intermediaries, have initiated telephone calls to the telephone numbers of consumers who have previously stated that they do not wish to receive calls by or on behalf of Defendants.

26. In numerous instances, Defendants have initiated telephone calls to consumers several times per day, continuing for days or weeks.

27. In numerous instances, Defendants have initiated outbound telemarketing calls with prerecorded messages that failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call:

16

the identity of the seller; that the purpose of the call is to sell goods or services; and the nature of the goods or services.

28      In the course of telemarketing described above, since September 1, 2009, Defendants or intermediaries acting on behalf of Defendants have initiated outbound telephone calls that delivered prerecorded messages to induce the sale of goods or services when the persons to whom those telephone calls were made had not signed an express agreement, in writing, authorizing the delivery of prerecorded messages by or on behalf of Defendants.

29.      In the course of telemarketing described above, Defendants "spoof" their calls by transmitting phony caller ID information, consisting of a phony business name and/or telephone number, so that call recipients do not know the source of the calls.  Defendants do not transmit or cause to be transmitted to caller identification services the telephone number and name of Defendants.

**The Prequalification Sales Pitch**

30.      Those consumers who press 1 on their phone after hearing Defendants' robocall or who call one of the toll free numbers listed on one of Defendants' websites are connected to one of Defendants' representatives.  In numerous instances, Defendants' representatives identify themselves during the telemarketing calls using the phrase "Debt Relief Services" or some similar generic phrase that does not identify the seller of the services by name.

17

31.   In numerous instances, Defendants' representatives do not disclose truthfully, promptly, and in a clear and conspicuous manner to consumers who receive outbound calls the identity of the "seller" or person that would provide or arrange to provide the services promoted by the telemarketing call, that the purpose of the call is to sell goods or services, or the nature of the goods or services.

32.   Defendants' representatives typically ask consumers three questions:  whether they have $10,000 or more in debt, whether the debt is unsecured, and whether they have an active bank account.  Defendants' telemarketers then ask consumers whether they are interested in hearing more about Defendants' debt relief services.

33.   In numerous instances, Defendants' representatives tell consumers that Defendants are a law firm or that attorneys will settle their debt.

34.   In numerous instances, after a consumer answers in the affirmative to the second and third questions, Defendants' representatives declare the consumer to be prequalified for Defendants' services and transfer the consumer to another representative.

### The Enrollment Sales Pitch

35.   After consumers are transferred from the initial telemarketer, Defendants' representatives explain Defendants' services to consumers.  In numerous instances, Defendants' representatives ask consumers to provide their

18

social security numbers, bank account numbers, and security information such as maiden name or sibling's middle name, all under the pretext of needing the information to obtain consumers' credit reports or to confirm consumers' debt-to-income ratio.

36.    In numerous instances, Defendants' representatives tell consumers that Defendants can settle consumers' debts for 50% or less of the amount consumers owe.  In numerous instances, Defendants' representatives provide consumers with an estimated monthly payment amount, which they calculate by taking the amount of debt a consumer has, dividing it by a number of months, and multiplying it by 50%.  In numerous instances, Defendants' representatives tell consumers that Defendants will charge a fee for their services.  The amount and timing of the fee varies depending on the representative, although typically the fee is 15% of the settlement amount.

37.    In numerous instances, Defendants' representatives tell consumers that Defendants are a law firm or have attorneys on staff who will be working with consumers.

**Defendants' "Services"**

38.    Defendant Nelson instructs the telemarketers to send to him the security and bank account information provided by consumers during the telemarketing calls at the end of each day.  For consumers who agree to enroll in

19

Defendants' services, Defendant Nelson uses this information to begin debiting money from consumers' bank accounts.

39.   In numerous instances, even when consumers decline to enroll in Defendants' services, Defendant Nelson nevertheless uses consumers' security information provided by consumers during the telemarketing call to begin debiting money from their bank accounts.

40.   In numerous instances, Defendants do not obtain a written authorization signed or authenticated by the consumers to have their bank accounts debited.  Furthermore, Defendants do not provide to consumers a copy of such written authorizations.

41.   In numerous instances, Defendants begin debiting monthly payments from consumers' bank accounts within a few days of the initial phone call.

42.   In numerous instances, Defendants debit an up-front fee of $200 or more from consumers' bank accounts within a few days of the initial phone call and before they settle any of the consumers' debts.

43.   In numerous instances, Defendants debit consumers' bank accounts for additional fees before they settle any of the consumers' debts.

44.   In numerous instances, Defendants do not settle consumers' debts.

20

45.    In numerous instances, when consumers attempt to cancel Defendants' services and discontinue the monthly debits, Defendants fail to honor such requests and continue debiting consumers' bank accounts.

46.    In numerous instances, when consumers request a refund of the fees they have paid, Defendants refuse to provide a refund.

47.    Defendant Nelson is not a lawyer.  Defendants are not a law firm nor do they employ attorneys to perform debt relief services.

## VIOLATIONS OF THE FTC ACT

48.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

49.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.  Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

### Count I

50.    In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of debt relief services, Defendants have represented, directly or indirectly, expressly or by implication, that consumers who

purchase Defendants' services will have their debts reduced substantially,

including by 50- 89%, as stated by Defendants in their telemarketing and on their

websites.

51.    In truth and in fact, the representation set forth in paragraph 50 is false

or was not substantiated at the time the representation was made.

52.    Therefore, Defendants' representation as set forth in paragraph 50 is

false and misleading and constitutes a deceptive act or practice in violation of

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count II

53.    In numerous instances, in connection with the advertising, marketing,

promotion, offering for sale, or sale of debt relief services, Defendants have

represented, directly or indirectly, expressly or by implication, that they are a law

firm or employ lawyers for the purpose of providing the debt relief services.

54.    In truth and in fact, Defendants are not a law firm and do not employ

lawyers for the purpose of providing debt settlement services.

55.    Therefore, Defendants' representation as set forth in paragraph 53 is

false and misleading and constitutes a deceptive act or practice in violation of

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Count III**

56.    In numerous instances, Defendants have caused consumers' bank accounts to be debited without having obtained previously consumers' express informed consent.

57.    Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

58.    Therefore, Defendants' practices as described in paragraph 56 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

**VIOLATIONS OF THE TELEMARKETING SALES RULE**

59.    Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. § 6101 *et seq*. The FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain provisions thereafter.

60.    Among other things, the 2003 amendments to the TSR established a "do-not-call" registry (the "National Do Not Call Registry" or "Registry"), maintained by the FTC, of consumers who do not wish to receive certain types of telemarketing calls. Consumers can register their telephone numbers on the

23

Registry without charge either through a toll-free telephone call or over the Internet at www.donotcall.gov.

61.    Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing" as those terms are defined in the TSR, 16 C.F.R. § 310.2 (aa), (cc), and (dd).

62.    Under the TSR, a "telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.  16 C.F.R. § 310.2(cc).  A "seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.  Id. § 301.2(aa).

63.    Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(v). Defendants have initiated, or have caused telemarketers to initiate, "outbound telephone calls" to consumers.

64.    The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the performance, efficacy, nature, or central characteristics of the goods or services that are the subject of a sales offer. 16 C.F.R. § 310.3(a)(2)(iii).

24

65.     The TSR prohibits sellers and telemarketers from causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer. 16 C.F.R. § 310.4(a)(7).

66.     The TSR also requires sellers and telemarketers to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call, or transmit the customer service number of the seller on whose behalf the call is made and, when made available by the telemarketer's seller, the name of the seller.  16 C.F.R. § 310.4(a)(8).

67.     The TSR also prohibits sellers and telemarketers from initiating an outbound telephone call to any person when that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered. 16 C.F.R. § 310.4(b)(1)(iii)(A).

68.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to numbers on the Registry. 16 C.F.R. § 310.4(b)(1)(iii)(B).

69.     The TSR also prohibits sellers and telemarketers from causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or

continuously with intent to annoy, abuse, or harass any person at the called

number.  16 C.F.R. § 310.4(b)(1)(i).

70.    The TSR also requires telemarketers in an outbound telephone call to

disclose truthfully, promptly, and in a clear and conspicuous manner the following

information:

        A.     The identity of the seller;

        B.     That the purpose of the call is to sell goods or services; and

        C.     The nature of the goods or services.

16 C.F.R. § 310.4(d).

71.    As amended, effective December 1, 2008, the TSR prohibits initiating

a telephone call that delivers a prerecorded message to induce the purchase of any

good or service unless the message promptly discloses:

        A.     The identity of the seller;

        B.     That the purpose of the call is to sell goods or services; and

        C.     The nature of the goods or services.

16 C.F.R. § 310.4(b)(1)(v)(B)(ii).

72.    As amended, effective September 1, 2009, the TSR prohibits initiating

a telephone call that delivers a prerecorded message to induce the purchase of any

good or service unless the seller has obtained from the recipient of the call an

express agreement, in writing, that evidences the willingness of the recipient of the

call to receive calls that deliver prerecorded messages by or on behalf of a specific seller. The express agreement must include the recipient's telephone number and signature, must be obtained after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person, and must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. 16 C.F.R. § 310.4(b)(1)(v)(A).

73.     As amended, effective September 27, 2010, the TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using such service.  16 C.F.R. § 310.3(a)(2)(x).

74.     As amended, effective October 27, 2010, the TSR prohibits sellers and telemarketers from requesting or receiving payment of any fees or consideration for any debt relief service until and unless:

A.     the seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer;

27

B.    the customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector; and

C.    to the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

1.    bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount.  The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

2.    is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration.  The percentage charged cannot change from one individual debt to another.  The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt.

16 C.F.R. § 310.4(a)(5)(i).

75.    Defendants are "sellers" or "telemarketers" of "debt relief services," as defined by the TSR, 16 C.F.R. § 310.2(aa), (cc), and (m).

76.    Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of

the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count IV

77.    In numerous instances, in connection with the telemarketing of goods or services, Defendants have misrepresented, directly or indirectly, expressly or by implication, material aspects of the performance, efficacy, nature, or central characteristics of such goods and services, including, but not limited to:

>    A.    The amount of money or the percentage of the debt amount that customers will save by using Defendants' services; and

>    B.    That Defendants are law firms or employ lawyers for the purpose of providing debt relief services.

78.    Defendants' acts or practices, as described in paragraph 77, constitute deceptive telemarketing acts or practices that violate Section 310.3(a)(2)(iii) of the TSR, 16 C.F.R. § 310.3(a)(2)(iii).

### Count V

79.    In numerous instances on or after September 27, 2010, in connection with the telemarketing of debt relief services, Defendants have misrepresented, directly or indirectly, expressly or by implication, material aspects of the debt relief services, including, but not limited to:

29

A.    The amount of money or the percentage of the debt amount that

customers will save by using Defendants' services; and

B.    That Defendants are law firms or employ lawyers for the

purpose of providing debt relief services.

80.    Defendants' acts or practices, as described in paragraph 79,

constitute deceptive telemarketing acts or practices that violate Section

310.3(a)(2)(x) of the TSR, 16 C.F.R. § 310.3(a)(2)(x).

## Count VI

81.    In numerous instances, in connection with telemarketing, Defendants

have caused billing information to be submitted for payment, directly or indirectly,

without the express informed consent of the customer.

82.    Defendants' acts or practices, as described in paragraph 81, constitute

abusive telemarketing acts or practices that violate Section 310.4(a)(7) of the TSR,

16 C.F.R. § 310.4(a)(7).

## Count VII

83.    In numerous instances on or after October 27, 2010, in connection

with the telemarketing of debt relief services, Defendants have requested or

received payment of fees or consideration for debt relief services:

(1)    before (A) they have renegotiated, settled, reduced, or

otherwise altered the terms of at least one debt pursuant to a settlement agreement,

30

debt management plan, or other such valid contractual agreement executed by the customer; and (B) the customer has made at least one payment pursuant to that agreement; and/or

(2)    when, to the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either (A) does not bear the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount, or (B) is not a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration and that percentage does not change from one individual debt to another.

84.    Defendants' acts or practices, as described in paragraph 83, are abusive telemarketing acts or practices that violate Section 310.4(a)(5)(i) of the TSR, 16 C.F.R. § 310.4(a)(5)(i).

## Count VIII

85.    In numerous instances, in connection with telemarketing, Defendants have initiated, or caused others to initiate, an outbound telephone call to a person's telephone number on the National Do Not Call Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

## Count IX

86.    In numerous instances, in connection with telemarketing, Defendants have initiated, or caused others to initiate, an outbound telephone call to a person who previously has stated that he or she does not wish to receive such a call made by or on behalf of the seller whose goods or services are being offered, in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A).

## Count X

87.    In numerous instances, in connection with telemarketing, the Defendants have initiated, or have caused others to initiate, outbound telephone calls that fail to transmit the telephone number and name of the telemarketer or seller to any caller identification service in use by a recipient of a telemarketing call, in violation of the TSR, 16 C.F.R. § 310.4(a)(8).

## Count XI

88.    In numerous instances on or after September 1, 2009, Defendants have made, or caused others to make, outbound telephone calls that deliver prerecorded messages to induce the purchase of goods or services when the persons to whom these telephoned calls were made had not signed an express agreement, in writing, authorizing the seller to place prerecorded calls to such persons, in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(v)(A).

**Count XII**

89.     In numerous instances on or after December 1, 2008, in connection with telemarketing goods or services, Defendants have made, or caused others to make, outbound telephone calls that deliver a prerecorded message in which the telemarketer or message failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call:

        a.     The identity of the seller;

        b.     That the purpose of the call is to sell goods or services; and

        c.     The nature of the goods or services,

in violation of the TSR, 16 C.F.R. §§ 310.4(b)(1)(v)(B)(ii) and (d).

**Count XIII**

90.     In numerous instances, in the course of telemarketing goods or services, Defendants have caused a telephone to ring, or engaged a person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

91.     Defendants' acts or practices, as described in paragraph 90, constitute abusive telemarketing acts or practices that violate Section 310.4(b)(1)(i) of the TSR, 16 C.F.R. § 310.4(b)(1)(i).

33

**THE ELECTRONIC FUND TRANSFER ACT AND REGULATION E**

92.     Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." Pursuant to the EFTA, the Federal Reserve Board promulgated Regulation E, 12 C.F.R. Part 205 ("Federal Reserve Board's Regulation E").

93.     The Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), P.L. 111-203, 124 Stat. 1376 (2010), amended a number of consumer financial protection laws, including the EFTA. In addition to various substantive amendments, the Dodd-Frank Act generally transferred the Federal Reserve Board's rulemaking authority for the EFTA to the Bureau of Consumer Financial Protection ("Bureau"), effective July 21, 2011. Pursuant to the Dodd-Frank Act and the EFTA, as amended, the Bureau promulgated a new Regulation E (Electronic Fund Transfers), 12 C.F.R. Part 1005, implementing the EFTA, effective December 30, 2011 ("Bureau Regulation E").

94.     Section 205.10(b) of the Federal Reserve Board's Regulation E, 12 C.F.R. § 205.10(b), and Section 1005.10(b) of the Bureau's Regulation E, 12 C.F.R. § 1005.10(b), provide that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly

34

authenticated by the consumer.  The person that obtains the authorization shall

provide a copy to the consumer."

95.     Comment 5 to Section 205.10(b) of the Federal Reserve Board's

Official Staff Commentary to Regulation E, 12 C.F.R. Part 205 Supp. I at ¶ 10(b),

cmt. 5, and Comment 5 to Section 1005.10(b) of the Bureau's Official

Interpretations of Regulation E, 12 C.F.R. Part 1005 Supp. I at ¶ 10(b), cmt. 5,

provide that "[t]he authorization process should evidence the consumer's identity

and assent to the authorization."

## Count XIV

96.     In numerous instances, Defendants have debited consumers' bank

accounts on a recurring basis without:

      a.      obtaining a written authorization signed or similarly

           authenticated from consumers for preauthorized electronic fund

           transfers from the accounts; and

      b.      providing to the consumers a copy of a written authorization

           signed or similarly authenticated by the consumers for

           preauthorized electronic fund transfers from the consumers'

           accounts

35

thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), Section 205.10(b) of the Federal Reserve Board's Regulation E, 12 C.F.R. § 205.10(b), and Section 1005.10(b) of the Bureau's Regulation E, 12 C.F.R. § 1005.10(b).

97.    Pursuant to Section 917(c) of the EFTA, 15 U.S.C. § 1693o(c), every violation of the EFTA, the Federal Reserve Board's Regulation E, and the Bureau's Regulation E constitutes a violation of the FTC Act.

98.    By engaging in violations of the EFTA, the Federal Reserve Board's Regulation E, and the Bureau's Regulation E, as alleged in paragraph 96, Defendants have engaged in violations of the FTC Act, 15 U.S.C. § 1693o(c).

## CONSUMER INJURY

99.    Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the TSR, the EFTA, the Federal Reserve Board's Regulation E, and the Bureau's Regulation E.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

100.   Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations  of any provision of law enforced by the FTC.  The Court, in

the exercise of its equitable jurisdiction, may award ancillary relief, including

rescission or reformation of contracts, restitution, the refund of monies paid, and

the disgorgement of ill-gotten monies, to prevent and remedy any violation of any

provision of law enforced by the FTC.

101.   Section 19 of the FTC Act, 15 U.S.C. § 57b, Section 6(b) of the

Telemarketing Act, 15 U.S.C. § 6105(b) authorize this Court to grant such relief as

the Court finds necessary to redress injury to consumers resulting from

Defendants' violations of the TSR, including the rescission or reformation of

contracts, and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act,

15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. §

6105(b), Section 917(c) of the EFTA, 15 U.S.C. § 1693o(c), and the Court's own

equitable powers, requests that the Court:

A.   Award Plaintiff such preliminary injunctive and ancillary relief as

may be necessary to avert the likelihood of consumer injury during the pendency

of this action and to preserve the possibility of effective final relief, including but

not limited to, temporary and preliminary injunctions, an order freezing assets,

immediate access, and appointment of a receiver;

B.      Enter a permanent injunction to prevent future violations of the FTC

Act, the TSR, the EFTA, the Federal Reserve Board's Regulation E, and the

Bureau's Regulation E by Defendants;

C.      Award such relief as the Court finds necessary to redress injury to

consumers resulting from Defendants' violations of the FTC Act, the TSR, the

EFTA, the Federal Reserve Board's Regulation E, and the Bureau's Regulation E,

including but not limited to, rescission or reformation of contracts, restitution, the

refund of monies paid, and the disgorgement of ill-gotten monies; and

//

//

//

//

//

//

//

//

//

//

//

//

38

D.      Award Plaintiff the costs of bringing this action, as well as such other

and additional relief as the Court may determine to be just and proper.

Dated: September 10, 2012                    Respectfully submitted,

                                             WILLARD K. TOM
                                             General Counsel


                                             _____
                                             GREGORY A. ASHE
                                             LISA A. ROTHFARB
                                             JASON M. ADLER
                                             Federal Trade Commission
                                             600 Pennsylvania Ave., N.W.
                                             Washington, D.C. 20580
                                             Telephone: 202-326-3719 (Ashe)
                                             Telephone: 202-326-2602 (Rothfarb)
                                             Telephone: 202-326-3231 (Adler)
                                             Facsimile: 202-326-3768
                                             Email: gashe@ftc.gov, lrothfarb@ftc.gov,
                                             jadler@ftc.gov

                                             RAYMOND E. MCKOWN
                                             (CA Bar No. 150975)
                                             Federal Trade Commission
                                             10877 Wilshire Blvd, Suite 700
                                             Los Angeles, CA 90024
                                             Telephone: 310-824-4325
                                             Facsimile: 310-824-4380
                                             Email: rmckown@ftc.gov

                                             Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Josephine Tucker and the assigned discovery Magistrate Judge is Jean P. Rosenbluth.

The case number on all documents filed with the Court should read as follows:

## SACV12- 1504 JST (JPRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Gregory A. Ashe
Federal Trade Commission
600 Pennsylvania Avenue NW, NJ-3158
Washington, DC 20580

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Federal Trade Commission | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **SACV12 - 1504 JST (JPRx)** |
| v. Nelson Gamble & Associates LLC (See attached) | |
| | **SUMMONS** |
| DEFENDANT(S). | |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Gregory A. Ashe_____, whose address is FTC, 600 Pennsylvania Ave. NW, NJ-3158, Washington, DC 20580_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

**DODJIE LAGMAN**

Dated: __SEP 1 0 2012__

By: _____
          Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)

SUMMONS

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Federal Trade Commission

**DEFENDANTS**
Nelson Gamble & Associates, LLC, Jackson Hunter Morris & Knight LLP, Blackrock Professional Corporation, Mekhin Capital, LLC, and Jeremy R. Nelson

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Gregory Ashe, Lisa Rothfard, Jason Adler, FTC, 600 Pennsylvania Ave NW, NJ3158, Washington, DC 20580, 202-326-3719
Ray McKown, FTC, 10877 Wilshire Blvd, Ste 700, LA, CA 9002, 3108244325

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☒ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in this State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☐ No   ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. Sections 45, 53(b), 57b; 15 U.S.C. Section 6101 et seq; 15 U.S.C. Section 1693o(c); 16 C.F.R. Part 310 - violation of FTC Act, Telemarketing Sales Rule, EFTA

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | CIVIL RIGHTS | ☐ 610 Agriculture | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☒ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

SACV12 - 1504 JST (JPRx)

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                CIVIL COVER SHEET                Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☑   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| All defendants reside or are located in Orange County | Blackrock Professional Corp maintains a mailing address in San Diego |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | Nationwide |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved                                      .

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____      Date _____

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |