Thomas H. Bienert, Jr., State Bar No. 135311
tbienert@bmkattorneys.com
Kenneth M. Miller, State Bar No. 151874
kmiller@bmkattorneys.com
Anne A. Uyeda, State Bar No. 235306
auyeda@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700/Facsimile  (949) 369-3701

Attorneys for Defendants
NELSON GAMBLE & ASSOCIATES, LLC,
also d/b/a Nelson Gamble & Associates, P.C.
and Nelson Parker Gamble & Banks, LLP;
JACKSON HUNTER MORRIS & KNIGHT LLP;
BLACKROCK PROFESSIONAL CORPORATION;
MEKHIA CAPITAL, LLC; and JEREMY NELSON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>    Plaintiff,<br><br>v.<br><br>NELSON GAMBLE & ASSOCIATES, LLC, also d/b/a Nelson Gamble & Associates, P.C. and Nelson Parker Gamble & Banks, LLP; JACKSON HUNTER MORRIS & KNIGHT LLP; BLACKROCK PROFESSIONAL CORPORATION; MEKHIA CAPITAL, LLC; and JEREMY NELSON,<br><br>    Defendants. | Case No. SACV12-1504 JST (JPRx)<br><br>**DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE WHY THE COURT SHOULD NOT ENTER A PRELIMINARY INJUNCTION**<br><br>**[Declaration of Kenneth M. Miller filed concurrently herewith]**<br><br>**<u>Hearing</u>**<br>Date:    October 12, 2012<br>Time:    1:30 p.m.<br>Place:   Courtroom 10A<br>             411 W. Fourth Street<br>             Santa Ana, CA 92701<br>Judge:  Hon. Josephine Staton Tucker |

## I. INTRODUCTION

Defendants Nelson Gamble & Associates LLC, Jackson Hunter Morris & Knight LLP, Mekhia Capital LLC, Blackrock Professional Corporation, and Jeremy Nelson (collectively, the "Defendants") hereby file this response (the "Response") to the order to show cause why this Court should not enter a preliminary injunction against Defendants.

Defendants are amenable to the entry of a preliminary injunction which contains the same terms and conditions as those contained in the *Ex Parte* Temporary Restraining Order (the "TRO") that was entered by this Court on September 10, 2012,[1] with four (4) additional modifications. Specifically, Defendants request that any preliminary injunction entered by this Court include provisions which: (1) permit the release of minimal funds to allow Defendant Jeremy Nelson ("Nelson") to cover basic monthly living expenses for his non-working spouse and two young children; (2) permit the release of funds to pay for Defendants' attorneys' fees; (3) permit Nelson to earn and spend income obtained through gainful employment; and (4) permit certain employees of Defendants to direct third-party processor, Crossroads Financial Technology, Inc. ("CFT") on how to perform certain processing and servicing actions for 320 of Defendants' customers (the "Customers") who have entered into term settlement agreements and/or term settlement stipulations with their respective creditors (the "Settlement Agreements"), so that the Settlement Agreements are not breached and the Customers are not exposed to further harm.

As of the date of this filing, Defendants are engaged in ongoing negotiations with Plaintiff Federal Trade Commission (the "FTC") in order to informally resolve as many of the issues discussed herein as possible. However, since Defendants have been unable to

---

[1] *See* Docket No. 17. In short, Defendants are willing to agree to a preliminary injunction which contains sections similar to those found in the TRO, with the exception of Section VII (entitled "Asset Freeze"). Nonetheless, Defendants reserve all rights to assert any applicable rights and privileges in this action, including but not limited to Nelson's privilege against self-incrimination under the Fifth Amendment.

reach any definitive resolution, Defendants have filed this Response out of an abundance of caution and to preserve their rights.

## II. THE COURT SHOULD CONSIDER THE BALANCE OF EQUITIES WHEN FASHIONING A PRELIMINARY INJUNCTION

Courts enjoy broad discretion in fashioning the appropriate remedies in an FTC action. *See, e.g., F.T.C. v. Network Services Depot, Inc.*, 617 F.3d 1127, 1141-42 (9th Cir. 2010) (observing that the "FTC Act's broad authorization of equitable remedies is the immediate source of the district court's power to fashion relief in this case"). In deciding on the terms of the preliminary injunction, this Court should consider private equities, including the burdens it imposes on Nelson. *See, e.g., F.T.C. v. Warner Communications Inc.*, 742 F.2d 1156, 1165 (9th Cir. 1984) (noting that private interests "are entitled to serious consideration").

### A. The Preliminary Injunction Should Include a Provision Allowing For the Release of Funds for Living Expenses

It is standard practice to provide a provision in a preliminary injunction order to allow for the payment of reasonable living expenses. *See, e.g., FTC v. Affordable Media, LLC*, 179 F. 3d 1228, 1236 (9th Cir. 1999) (noting that the district court had released monies to pay defendant's living expenses); *The Republic of the Philippines v. Marcos*, 862 F. 2d 1355, 1358 (9th Cir. 1988) (where the district court entered a preliminary injunction which enjoined the defendants from disposing of any of their assets save for the payment of normal living expenses and attorneys' fees); *FTC v. Arlington Press, Inc.*, Case No. 98CV9260, 1999 WL 33562452,*13 (C.D. Cal. Jan. 18, 1999) (FTC's proposed order freezes defendants' assets for all uses except the payment of "reasonable, usual and necessary living expenses"); *FTC v. Sage Seminars, Inc.*, Case No. 95-2854 SBA, 1995 WL 798938, *9 (N.D. Cal. Nov. 2, 1995) (where court noted that defendants' hardship concerns could be accommodated through court-supervised disbursements to provide for defendants' living expenses); *F.T.C. v. National Prize Info. Group Corp.*, Case No. 2:06CV01305 RCJPAL, 2006 WL 3234360, *1 (D. Nev. Nov. 2, 2006) (noting that the

district court authorized the release of funds to pay for defendants' business and living expenses).

Indeed, the Tenth Circuit has held that a "restraining order that prevents a defendant from supporting [himself] and [his] family pending and during trial would likely work an injustice with constitutional implications." *United States v. Jones*, 160 F.3d 641, 646 (10th Cir. 1998), citing *United States v. Thier,* 801 F.2d 1463, 1477 (5th Cir. 1986) (Rubin, J, concurring) (suggesting that such a result "shocks the judicial conscience"); *see S.E.C. v. Dowdell*, 175 F. Supp. 2d 850, 854-855 (W.D. Va. 2001) (court reviewed itemized list of defendant's living expenses and ordered carve-out of $4,000 per month for living expenses).

On October 3, 2012, counsel for Defendants sent the FTC a letter which: (a) pointed out the TRO prohibits Nelson from accessing funds and incurring charges on his credit and debit cards; (b) noted that, as a result, Nelson has been unable to access money to allow him to provide for food and other basic necessities for his non-working spouse and his two young daughters (ages 5 and 7); and (c) requested the release of at least $6,388/month to Nelson for his family's basic living necessities until this matter is resolved, as quantified by the itemized breakdown attached to the letter.[2]  Defendants have also provided documents to the FTC which demonstrate that they negotiated and resolved debt settlement actions on behalf of a subset of their customers and, accordingly, not all money received from Defendants' debt settlement service businesses should be deemed "proceeds of illegal activity."[3]

Accordingly, Defendants respectfully request that the preliminary injunction include a provision which permits the release of at least $6,388/month to Nelson to cover his family's basic living expenses.

---

[2] *See* Declaration of Kenneth M. Miller in support of this Response ("Miller Decl."), filed concurrently herewith, at Exhibit D.
[3] *See id.* at Exhibit C (settlement agreements which demonstrate that Defendants obtained favorable settlements for their customers).

### B. The Preliminary Injunction Should Include a Provision Allowing For the Release of Funds for Legal Fees

The basis of our adversary system is threatened when one party gains control of the other party's defense and ability to defend itself. As such, courts have reversed asset freezes that do not provide sufficient monies for reasonable attorneys' fees. *See, e.g., FTC v. Affordable Media*, 179 F. 3d at 1236 (where district court had released monies to pay defendant's legal fees); *F.T.C. v. World Wide Factors, Ltd.*, 882 F.2d 344, 348 (9th Cir. 1989) (defendants were permitted a carve-out from assets for reasonable attorney's fees); *F.T.C. v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1032 (7th Cir. 1988) (where corporate and individual assets were frozen, court carved out $175,000 for attorneys' fees and litigation expenses).

Additionally, there is a pending criminal investigation against Defendants. Defense of this action and potential criminal charges will require significant attorneys' fees and costs. Given Defendants' need for ongoing legal representation, Defendants respectfully request that the preliminary injunction include a provision which permits the release of at least $100,000.00 to pay for Defendants' attorneys' fees.

### C. The Preliminary Injunction Should Include a Provision Which Permits Nelson to Earn and Spend Income Obtained Through Gainful Employment

Section VII of the TRO (entitled "Asset Freeze") prohibits Defendants from "[t]ransferring . . . spending . . . or otherwise disposing of any funds . . . or any other assets . . . that are (1) owned or controlled, directly or indirectly by any Defendant(s), in whole or in part, or held, in whole or in part for the benefit of any Defendant(s); (2) in the actual or constructive possession of any Defendant(s); or (3) owned, controlled by, or in actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under the common control with any Defendant(s) . . . ."[4]

---

[4] *See* TRO [Docket No. 17], at p. 14.

Pursuant to the broad terms of this provision, Nelson is essentially prohibited from earning income through gainful employment since the TRO would preclude him from spending any funds he earned once they came into his possession. Nelson should be allowed to earn money through professions other than those delineated in the TRO and the complaint. Accordingly, Defendants respectfully request that the preliminary injunction include a provision which permits Nelson to earn and spend income obtained through gainful employment.

### D. The Preliminary Injunction Should Include a Provision Which Permits Certain Employees of Defendants to Direct CFT on How to Perform Servicing Actions Such That Customers' Settlements Are Not Jeopardized

As noted in correspondence sent to the FTC,[5] Defendant Jackson Hunter Morris & Knight LLP ("Jackson Hunter") currently represents 320 Customers who have entered into Settlement Agreements with their respective creditors. Many of these Settlement Agreements are contingent upon the creditors' continued timely receipt of payments designed to pay off the remaining outstanding negotiated balance owed by the Customer (the "Debt Settlement Payments"). The Debt Settlement Payments are serviced and handled by CFT, who initiates drafts from the Customers' bank accounts into the Customers' trust accounts each month, and then disburses the Debt Settlement Payments from the Trust Accounts to the Customer's creditors (the "Disbursements"). Generally, CFT makes the Disbursements at the direction of Jackson Hunter employees, who instruct CFT when and to whom the Debt Settlement Payments are to be made.

Defendants have requested that the TRO be modified to permit CFT, working with two Jackson Hunter employees who would instruct CFT as to when and to whom the Debt Settlement Payments are to be made, to continue performing the processing and servicing actions on behalf of Customers so that the Customers will not be in breach of the

---

[5] *See* Miller Decl., Exhibits A – C.

Settlement Agreements and lose the benefits of the negotiated settlements;[6] to date, the FTC has not agreed to take such action.[7]  In its latest correspondence, the FTC has proposed that "CFT resume making payments to creditors for consumers who have settlement agreements in place, and continue making payments until the money in those consumers' accounts is depleted," but without any involvement from Defendants.[8]  This suggestion is untenable for two reasons.  First, someone needs to direct CFT as to the dates on which, and the entities to whom, Debt Settlement Payments are to be made.  Second, the FTC's proposal does not take into account the fact that many Trust Accounts may not contain sufficient funds to cover the Debt Settlement Payments to the creditors.  Therefore, the Customers should be informed of the new process, so that they can make the Debt Settlement Payments on their own (if possible) and not lose the benefits of their Settlement Agreements.  The entities in the best position to assist in these two functions are Defendants.

     Accordingly, to prevent ongoing harm to the Customers, Defendants respectfully request that the preliminary injunction include a provision which permits two Jackson Hunter employees to work with CFT so that CFT may continue performing processing and servicing actions for the Customers who currently have Settlement Agreements in place, such that timely Debt Settlement Payments are received by the Customers' respective creditors.  Additionally, the preliminary injunction should permit the release of frozen funds to pay these employees.[9]

---

[6] Defendants have also proposed that these two Jackson Hunter employees be provided with minimal compensation and have agreed to not receive any fees or profits from CFT's continued actions in servicing the settlements and that the FTC shall have full access to, and the ability to monitor, these actions.  *See id.* at Exhibit A.
[7] *See id.* at Exhibits A – C, E – G.
[8] *See id.* at Exhibit G.
[9] As explained in Exhibit A, these employees earn $15-20 per hour.

## III. CONCLUSION

For the foregoing reasons, Defendants request that any preliminary injunction entered by the Court include the provisions described herein.

Dated:  October 5, 2012                    BIENERT, MILLER & KATZMAN, PLC

By: */s/ Kenneth M. Miller /s/*
    Thomas H. Bienert, Jr.
    Kenneth M. Miller
    Anne A. Uyeda
    Attorney for Defendants Nelson Gamble & Associates LLC, Jackson Hunter Morris & Knight LLP, Mekhia Capital LLC, Blackrock Professional Corporation, and Jeremy Nelson

# CERTIFICATE OF SERVICE

I, Coleen Grogan, declare,

That I am a citizen of the United States and am a resident or employed in Orange County, California; that my business address is 903 Calle Amanecer, Suite 350, San Clemente, California 92673; that I am over the age of 18 and not a party to the above-entitled action.

That I am employed by a member of the United States District Court for the Central District of California and at whose direction I caused service of: DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE WHY THE COURT SHOULD NOT ENTER A PRELIMINARY INJUNCTION; DECLARATION OF KENNETH M. MILLER on the interested parties as follows:

**X    BY ELECTRONIC MAIL:** by electronically filing the foregoing with the Clerk of the District Court using its ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies said parties in this case:

GREGORY A. ASHE  
LISA A. ROTHFARB  
JASON M. ADLER  
Federal Trade Commission  
600 Pennsylvania Ave., N.W.  
Washington, D.C. 20580  
gashe@ftc.gov  
lrothfarb@ftc.gov  
jadler@ftc.gov  

RAYMOND E. MCKOWN  
Federal Trade Commission  
10877 Wilshire Blvd, Suite 700  
Los Angeles, CA 90024  
rmckown@ftc.gov  

This certificate was executed on October 5, 2012, at San Clemente, California.

I certify under penalty of perjury that the foregoing is true and correct.

                                                    */s/ Coleen Grogan /s/.*  
                                                      Coleen Grogan