1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>       v.<br><br>NELSON GAMBLE &<br>ASSOCIATES LLC, et al,<br><br>    Defendants. | CASE NO. SACV12-1504 JST (JPRx)<br><br>**STIPULATED PRELIMINARY INJUNCTION** |

18
19
20
21
22
23
24
25
26
27
28

Plaintiff, Federal Trade Commission ("FTC"), commenced this civil action on September 10, 2012, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6101 *et seq.*, and Section 917(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c), in connection with the marketing and sale of debt relief services.  On motion by the FTC, this Court entered an *ex parte* temporary restraining order ("TRO") with asset freeze and other equitable relief against Defendants Nelson Gamble & Associates, LLC (also d/b/a Nelson Gamble & Associates, P.C., and Nelson Parker Gamble & Banks, LLP), Jackson

Hunter Morris & Knight, LLP, BlackRock Professional Corporation, Mekhia Capital, LLC, and Jeremy R. Nelson.   The FTC and Defendants have stipulated and agreed to entry of a preliminary injunction order ("Order").

## FINDINGS

By stipulation of the parties, the Court finds as follows:

1.     The FTC and Defendants have stipulated and agreed to the entry of this preliminary injunction order without any admission of wrongdoing or violation of law, and without a finding by the Court of law or fact other than stated below.

2.     Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order.

3.     The Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over Defendants.

4.     Venue in the Central District of California is proper under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. § 53(b).

5.     The FTC asserts that there is good cause to believe that Defendants have engaged, and are likely to continue to engage, in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310; Section 907(a) of EFTA, 15 U.S.C. § 1693e(a); Section 205.10(b) of the Federal Reserve Board's Regulation E, 12 C.F.R. § 205.10(b); and Section 1005.10(b) of the Consumer Financial Protection Bureau's Regulation E, 12 C.F.R. § 1005.10(b), and that the FTC is, therefore, likely to prevail on the merits of this action.

6.     The FTC asserts that there is good cause to believe that consumers will suffer immediate and continuing harm unless Defendants are immediately restrained by an order of this Court.

7.     No security is required of any agency of the United States for issuance of a preliminary injunction,  Fed. R. Civ. P. 65(c).

8.     The entry of this Preliminary Injunction is in the public interest.

## DEFINITIONS

A.     **"Assets"** means any legal or equitable interest in, right to, or claim to, any real or  personal property, including, without limitation, chattels, goods, instruments, equipment, fixtures, general intangibles, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, contracts, receivables, shares of stock, and all cash, wherever located.

B.     **"Assisting others"** includes, but is not limited to:

1.     performing customer service functions, including, but not limited to, receiving or responding to consumer complaints;

2.     formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not limited to, any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication;

3.     formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

4.     providing names of, or assisting in the generation of, potential customers;

5.     performing marketing, billing, or payment services of any kind; and

6.     acting or serving as an owner, officer, director, manager, or principal of any entity.

C.    **"Competent and reliable evidence"** means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

D.    **"Consumer"** means any  person.

E.    "**Corporate Defendants**" means Nelson Gamble & Associates LLC, Jackson Hunter Morris & Knight LLP, Mekhia Capital LLC, and Blackrock Professional Corporation, and their successors, assigns, affiliates, or subsidiaries, and each of them by whatever names each might be known.

F.    **"Customer"** means any person who has paid, or may be required to pay, for products, services, plans, or programs offered for sale or sold by any other person.

G.    **"Debt Relief product or service"** means any product, service, plan, or program represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt or obligation, between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

H.    "**Defendants**" means the Individual Defendant and the Corporate Defendants, individually, collectively, or in any combination, and each of them by whatever names each might be known.

I.    **"Document"** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which the information can be obtained

and translated, if necessary, through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

J.     **"Financial Institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

K.     **"Financial related product or service"** means any product, service, plan, or program represented, expressly or by implication, to:

A.     provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, credit, debit, or stored value cards;

B.     improve, or arrange to improve, any consumer's credit record, credit history, or credit rating;

C.     provide advice or assistance to any consumer with regard to any activity or service the purpose of which is to improve a consumer's credit record, credit history, or credit rating;

D.     provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, a loan or other extension of credit;

E.     provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving any service represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of any debt or obligation (other than a debt or obligation secured by a mortgage on a consumer's dwelling) between a consumer and one or more secured creditors, servicers, or debt collectors.

L.     **"Individual Defendant"** means Jeremy Rommel Nelson.

M.    "**Material**" means likely to affect a person's choice of, or conduct regarding, goods or services.

N.    **"National Do Not Call Registry"** means the National Do Not Call registry, which is the "do-not-call" registry maintained by the Federal Trade Commission pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(B).

O.    **"Person"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

P.    **"Telemarketing"** means a plan, program, or campaign (whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310), which is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

Q.    The terms **"and"** and **"or"** shall be construed conjunctively or disjunctively as  necessary to make the applicable phrase or sentence inclusive rather than exclusive.

## ORDER

## PROHIBITED REPRESENTATIONS

I.    **IT IS THEREFORE ORDERED** that in connection with the advertising, marketing, promotion, offering for sale, or sale of any debt relief product or service, Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby restrained and enjoined from:

A.      Misrepresenting, or assisting others who are misrepresenting, expressly or by implication, any of the following:

1.      That consumers who use any debt relief product or service will have their debts substantially reduced;

2.      That any Defendant or any other person is a lawyer or law firm or employs a lawyer or law firm for the purpose of providing debt relief products or services;

3.      The degree of success that any Defendant or any other person has had in performing any debt relief product or service;

4.      The nature of any Defendant's or any other person's relationship with any debt holder or servicer, or other secured or unsecured lender;

5.      The amount of time it will take or is likely to take to obtain or arrange a renegotiation, settlement, modification, or other alteration of the terms of any debt; or

6.      Any other fact material to a consumer's decision whether to purchase any debt relief product or service; and

B.      Representing, or assisting others who are representing, expressly or by implication, the benefits, performance, or efficacy of any debt relief product or service, unless at the time such representation is made, Defendants possess and rely upon competent and reliable evidence that substantiates that the representation is true.

**RESTRICTIONS ON TELEMARKETING**

**II.      IT IS FURTHER ORDERED** that, in connection with the telemarketing of any product or service, Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those persons or entities in

active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby restrained and enjoined from:

   A.   misrepresenting, directly or by implication:

      1.   The amount of money or the percentage of the debt amount that  customers will save by using any product or service, including but not limited to any debt relief product or service; and

      2.   That any person is a lawyer or law firm or employs a lawyer or law firm for the purpose of providing debt relief products or services;

   B.   causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer;

   C.   initiating, or causing others to initiate, an outbound telephone call to a person's telephone number on the National Do Not Call Registry;

   D.   initiating, or causing others to initiate, an outbound telephone call to a person who previously has stated that he or she does not wish to receive such a call made by or on behalf of the seller whose goods or services are being offered;

   E.   initiating, or causing others to initiate, outbound telephone calls that fail to transmit the telephone number and name of the telemarketer or seller to any caller identification service in use by a recipient of a telemarketing call;

   F.   making, or causing others to make, outbound telephone calls that deliver prerecorded messages to induce the purchase of goods or services when the persons to whom these telephoned calls were made had not signed an express agreement, in writing, authorizing the seller to place prerecorded calls to such persons;

G.      making, or causing others to make, outbound telephone calls that deliver a prerecorded message in which the telemarketer or message fails to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call:

1.      The identity of the seller;

2.      That the purpose of the call is to sell goods or services; and

3.      The nature of the goods or services;

H.      causing a telephone to ring, or engaging a person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

## PROHIBITION ON UNAUTHORIZED WITHDRAWALS

**III.    IT IS FURTHER ORDERED** that Defendants and their successors, assigns, officers, agents, servants, employees, attorneys,  and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby restrained and enjoined from:

A.      Causing consumers' bank accounts to be debited without having obtained consumers' express informed consent.

B.      making electronic fund transfers from a consumer's account on a recurring basis without:

1.      Obtaining a written authorization signed or similarly authenticated from consumers for preauthorized electronic fund transfers from the accounts; and

2.     Providing to the consumers a copy of a written authorization signed or similarly authenticated by the consumers for preauthorized electronic fund transfers from the consumers' accounts.

**RESTRICTION ON COLLECTION OF ADVANCE FEES**

**IV.    IT IS FURTHER ORDERED** that Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any debt relief product or service, are hereby restrained and enjoined from requesting or receiving payment of fees or consideration for debt relief services:

1.     before (A) they have renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and (B) the customer has made at least one payment pursuant to that agreement; and/or

2.     when, to the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either (A) does not bear the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount, or (B) is not a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration and that percentage does not change from one individual debt to another;

**DISABLEMENT OF WEBSITES AND PRESERVATION OF ELECTRONIC RECORDS**

**V.     IT IS FURTHER ORDERED** that, immediately upon service of the Order upon them, (1) any person hosting any Internet website for, or on behalf of, any Defendant, and (2)  Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, shall:

A.     Immediately do whatever is necessary to ensure that any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any debt relief product or service, including, but not limited to nelsongamble.com, cmbmortgagecorp.com, drlgpc.com, drlgpa.com, nelsongamble.org, nelsongamble.net, nelsongamble.info, checkmatedebt.info, checkmatedebt.org, checkmatedebt.com, checkmatedebtsolutions.com, checkmatedebt.net, jhmklaw.com, jhmklaw.org, jhmklaw.net, mekhiacapital.com, jhmkllp.com, jhmkllp.net, debtsettlementscam.org, blackrockmortgage.com, blackrockpc.com, blackrockllp.com, blackrocklaw.com, blackrocklawgroup.com, and blackrocklaw.net, cannot be accessed by the public;

B.     Prevent the destruction or erasure of any Internet website used by Defendant for the advertising, marketing, promotion, offering for sale, sale, or provision of any debt relief product or service, including but not limited to nelsongamble.com, cmbmortgagecorp.com, drlgpc.com, drlgpa.com, nelsongamble.org, nelsongamble.net, nelsongamble.info, checkmatedebt.info,

checkmatedebt.org, checkmatedebt.com, checkmatedebtsolutions.com,
checkmatedebt.net, jhmklaw.com, jhmklaw.org, jhmklaw.net,
mekhiacapital.com, jhmkllp.com, jhmkllp.net, debtsettlementscam.org,
blackrockmortgage.com, blackrockpc.com, blackrockllp.com,
blackrocklaw.com, blackrocklawgroup.com, and blackrocklaw.net, by
preserving such website in the format in which it is maintained currently; and

     C.     Immediately notify in writing counsel for the FTC of any other
Internet website operated or controlled by any Defendant not listed in Section
V.A or V.B above.

### SUSPENSION OF INTERNET DOMAIN NAME REGISTRATIONS

**VI.**    **IT IS FURTHER ORDERED** that any domain name registrar shall
suspend the registration of any Internet website used by Defendants for the
advertising, marketing, promotion, offering for sale, sale, or provision of any
debt relief product or service, including, but not limited to nelsongamble.com,
cmbmortgagecorp.com, drlgpc.com, drlgpa.com, nelsongamble.org,
nelsongamble.net, nelsongamble.info, checkmatedebt.info, checkmatedebt.org,
checkmatedebt.com, checkmatedebtsolutions.com, checkmatedebt.net,
jhmklaw.com, jhmklaw.org, jhmklaw.net, mekhiacapital.com, jhmkllp.com,
jhmkllp.net, debtsettlementscam.org, blackrockmortgage.com, blackrockpc.com,
blackrockllp.com, blackrocklaw.com, blackrocklawgroup.com, and
blackrocklaw.net, and provide immediate notice to counsel for the FTC of any
other Internet domain names registered by Defendant or his officers, agents,
servants, employees, and attorneys, and those persons in active concert or
participation with Defendant who receive actual notice of this Order by personal
service or otherwise.

### ASSET FREEZE

**VII.   IT IS FURTHER ORDERED** that:

A.     Except as set forth in Sections VII.B, C, D, and E of this Order, Defendants are hereby restrained and enjoined from directly or indirectly:

1.     Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, accounts, contracts, consumer lists, or any other assets, or any interest therein, wherever located, including outside the United States, that are (1) owned or controlled, directly or indirectly, by any Defendant(s), in whole or in part, or held, in whole or in part for the benefit of any Defendant(s); (2) in the actual or constructive possession of any Defendant(s); or (3) owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Defendant(s), including but not limited to, any assets of Checkmate Debt Solutions, Inc., Debt Relief Law Group PC, Lexxani Insurance Services Inc., CMB Mortgage Corporation, J. Nelson Financial Enterprises Inc. (d/b/a Venture Capital Investments), and the Nelson Family Trust, and any assets held by, for, or under the name of any Defendant(s) at any bank, savings and loan institution, or bank of any Defendant(s), or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind;

2.     Opening or causing to be opened any safe deposit boxes titled in the name of any Defendant(s), or subject to access by any Defendant(s);

3.     Incurring charges or cash advances on any credit card, debit card, or checking card issued in the name, singly or jointly, of any Defendant(s);

4.      Obtaining a personal or secured loan;

5.      Incurring liens or encumbrances on real property, personal property or other  assets in the name, singly or jointly, of any Defendant(s); and

6.      Cashing any checks from consumers, clients, or customers of any Defendant(s).

7.      The funds, property, and assets affected by this Section shall include: (a) all assets of each Defendant as of the time this Order is entered, and (b) those assets obtained after entry of this Order that are obtained from any debt relief activities that predate the entry of this Order.

B.      J.P. Morgan Chase Bank shall transfer (i) the amount of $4,978 from account number xxxx9076 in the name of Blackrock Professional Corporation to account number xxxx6788 in the name of Jeremy Nelson and (ii) the amount of $155.99 to the law firm of Bienert, Miller & Katzman, PLC in accordance with written instructions to be provided by Bienert, Miller & Katzman for legal services provided or to be provided to Defendants by Bienert, Miller & Katzman.  Thereafter, the asset freeze provisions of this Order shall not apply to account number xxxx6788 in the name of Jeremy Nelson.

C.      Wells Fargo Bank, N.A. shall transfer the balance of the following accounts to the law firm of Bienert, Miller & Katzman, PLC in accordance with written instructions to be provided by Bienert, Miller & Katzman for legal services provided or to be provided to Defendants by Bienert, Miller & Katzman: (i) account number xxxx0397 in the name of Blackrock Professional Corp., (ii) account numbers xxxx0348, xxxx0916, xxxx0924, and xxxx0932 in the name of Jackson Hunter Morris & Knight, (iii) account numbers xxxx0728 and xxxx9769 in the name of Lexxani Insurance Services, and (iv) account numbers xxxx0777 and xxxx0908 in the name of Debt Relief Law Group.

Thereafter, the asset freeze provisions of this Order shall not apply to account numbers xxxx0728 and xxxx9769 in the name of Lexxani Insurance Services.

D.      Bank of America N.A. shall transfer the balance of account number xxxx2667 in the name of Blackrock Professional Corp. to the law firm of Bienert, Miller & Katzman, PLC in accordance with written instructions to be provided by Bienert, Miller & Katzman for legal services provided or to be provided to Defendants by Bienert, Miller & Katzman.

E.      The funds, property and assets affected by this Order shall include those assets existing as of the effective date of this Order, including without limitation, those acquired by loan or gift.  Defendant Jeremy Nelson may retain and spend income received from employment performed after the date of entry of this Order; *provided, however*, that such income shall first be deposited into J.P. Morgan Chase Bank account number xxxx6788.  Further, Defendant Nelson may retain and spend assets acquired by loan or gift after the date of entry of this Order only after identifying such assets to FTC counsel.  This section does not apply to loans or gifts valued at less than $500.

F.      Nothing herein shall preclude Defendants from filing future motions with the Court for release of funds for the payment of reasonable and necessary living expenses or attorney's fees.  Nothing herein shall preclude the FTC from filing objections to any such future motion for release of funds.

## RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES

**VIII.  IT IS FURTHER ORDERED** that any financial or brokerage institution or depository, escrow agent, title company, commodity trading company, trust, entity, or person that holds, controls, or maintains custody of any account or asset owned or controlled by any Defendant(s), or has held, controlled, or

maintained any account or asset of, or on behalf of, any Defendant(s), upon service with a copy of this Order, shall:

A.     Hold and retain within its control and prohibit Defendants from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, gifting, or otherwise disposing of any of the assets, funds, or other property held by or on behalf of any Defendant(s) in any account maintained in the name of or for the benefit of any Defendant(s), in whole or in part,  except for those identified in Sections VII.B, C, D, and E and Section IX of this Order and except as directed by further order of the Court;

B.     Deny the Defendants access to any safe deposit box titled in the name of any Defendant(s), individually or jointly, or subject to access by any Defendant(s), whether directly or indirectly.

C.     To the extent not already done so pursuant to the TRO issued in this case, provide counsel for Plaintiff, within three (3)  business days after being served with a copy of this Order, a certified statement setting forth:

1.     the identification number of each such account or asset titled (1) in the  name, individually or jointly, of any Defendant(s); (2) held on behalf of, or for the benefit of, any Defendant(s); (3) owned or controlled by any Defendant(s); or (4) otherwise subject to access by any Defendant(s), directly or indirectly;

2.     the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close

the account, and the name of the person or entity to whom such account or other asset was remitted;

        3.    the identification of any safe deposit box that is either titled in the name of any Defendant(s), or is otherwise subject to access by any Defendant(s); and

        4.    if an account, safe deposit box, or other asset has been closed or removed, the date closed or removed, the balance on such date, and the manner in which such account or asset was closed or removed.

    D.    To the extent not already done so pursuant to the TRO issued in this case, provide counsel for Plaintiff, within three (3) business days after being served with a request, copies of all documents pertaining to such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; provided that such institution or custodian may charge a reasonable fee.

## TREATMENT OF CONSUMER ACCOUNTS AND PAYMENTS TO CREDITORS

**IX.   IT IS FURTHER ORDERED** that:

    A.    Crossroads Financial Technologies, LLC ("CFT") shall cease collecting funds from consumers who purchased debt relief services from Defendants.

    B.    Defendants shall provide the FTC with copies of all settlement agreements they have negotiated and/or obtained between consumers and consumers' creditors.

C.     To the extent that there are settlement agreements between consumers who purchased debt relief services from Defendants and such consumers' creditors and to the extent that sufficient funds are available in the special purpose accounts held by CFT for the benefit of such consumers, CFT shall make payments from such accounts to such consumers' creditors pursuant to instructions either already on file with CFT or to be provided CFT by the FTC.

D.     To the extent that there are settlement agreements between consumers who purchased debt relief services from Defendants and such consumers' creditors but there are not sufficient funds available in the special purpose accounts held by CFT for the benefit of such consumers, CFT shall return to such consumers the balances of such accounts.

E.     To the extent that there are no settlement agreements between consumers who purchased debt relief services from Defendants and such consumers' creditors, CFT shall return to such consumers the balances of such consumers' special purpose accounts.

F.     To the extent that there are no settlement agreements between consumers who purchased debt relief services from Defendants and any of such consumers' creditors, Defendants may send written notice to any such consumer to ask whether such consumers would like Defendants to negotiate or attempt to negotiate a settlement agreement between such consumer and such consumer's creditor.  In sending any such written notice and in any other communication with such consumers, Defendants shall comply with Sections I, II, III, and IV of this Order.  Before commencing any such negotiations on behalf of a consumer, Defendants must first obtain written authorization from such consumer and provide the FTC with a copy of such authorization.  To the extent that

Defendants negotiate or obtain a settlement agreement on behalf of any such consumer, Defendants shall, within three (3) business days, provide such consumer and the FTC with a copy of such settlement agreement. Defendants shall not be entitled to, nor shall they collect or receive, any fee or other compensation as a result of any settlement agreement negotiated or obtained under this sub-section. The parties agree that the obtaining or the failure to obtain any authorization to negotiate shall not be used as evidence that Defendants did or did not violate Section 5 of the FTC Act, the TSR, or the EFTA.

G.     To the extent that a payment required to be made to a creditor on a date between the date of entry of the TRO and three (3) business days after the date of entry of this Order pursuant to a settlement agreement between such creditor and any consumer who purchased debt relief services from Defendants was not made, that fact shall not constitute a breach of such settlement agreement and such creditor shall continue to honor such settlement agreement. To the extent that the schedule of payments set forth in any such settlement agreement required any payment to be made between the date of entry of the TRO and three (3) business days after the date of entry of this Order, such payment and any subsequent payments shall be due thirty (30) days later than the originally scheduled payment.

H.     The FTC shall notify all consumers referred to in sub-sections C, D, and E of this Section IX and all creditors referred to in sub-section G of this Section IX, and inform them of the substance of this Section IX.

**FINANCIAL REPORTS AND ACCOUNTING**

**X.     IT IS FURTHER ORDERED** that, to the extent not already done so pursuant to the TRO issued in this case, each Defendant, within three (3)

business days of service of this Order, shall prepare and deliver to counsel for the FTC:

A.     For the Individual Defendant, a completed financial statement accurate as of the date of service of this Order upon such Defendant (unless otherwise agreed upon with FTC counsel) on the form lodged as Attachment A to the FTC's TRO Application.

B.     For Corporate Defendants, a completed financial statement accurate as of the date of service of this Order upon such Defendants (unless otherwise agreed upon with FTC counsel) on the form lodged as Attachment B to the FTC's TRO Application.

C.     For each Defendant, a completed statement, verified under oath, of all payments, transfers or assignments of funds, assets, or property worth $1,000 or more since January 1, 2009.  Such statement shall include:  (a) the amount transferred or assigned; (b) the name of each transferee or assignee; (c) the date of the transfer or assignment; and (d) the type and amount of consideration paid the Defendant.  Each statement shall specify the name and address of each financial institution and brokerage firm at which the Defendant has accounts or safe deposit boxes.  Said statements shall include assets held in foreign as well as domestic accounts.

## CONSUMER CREDIT REPORTS

**XI.     IT IS FURTHER ORDERED** that Plaintiff may obtain credit reports concerning any  Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiff.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**REPATRIATION OF FOREIGN ASSETS**

**XII.   IT IS FURTHER ORDERED** that, to the extent not already done so pursuant to the TRO issued in this case, within five (5) business days following the service of this Order, each Defendant shall:

A.     Provide counsel for the FTC with a full accounting of all assets, accounts, funds, and documents outside of the territory of the United States that are held either:  (1) by them; (2) for their benefit; (3) in trust by or for them, individually or jointly; or (4) under their direct or indirect control, individually or jointly;

B.     Transfer to the territory of the United States all assets, accounts, funds, and documents in foreign countries held either: (1) by them; (2) for their benefit; (3) in trust by or for them, individually or jointly; or (4) under their direct or indirect control, individually or jointly;

C.     Hold and retain all repatriated assets, accounts, funds, and documents, and prevent any transfer, disposition, or dissipation whatsoever of any such assets, accounts, funds, or documents; and

D.     Provide the FTC access to all records of accounts or assets of the Corporate Defendants and Individual Defendants held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records lodged with the FTC's TRO Application as Attachment C.

**NON-INTERFERENCE WITH REPATRIATION**

**XIII.  IT IS FURTHER ORDERED** that Defendants, and each of their successors, assigns, members, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate

or other device, are hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by Section XI of this Order, including but not limited to:

A.      Sending any statement, letter, fax, e-mail or wire transmission, telephoning or  engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that all assets have been fully repatriated pursuant to Section XI of this Order; and

B.      Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Section XI.

## PRESERVATION OF RECORDS

**XIV.  IT IS FURTHER ORDERED** that Defendants, and each of their successors, assigns, members, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate or other device, are hereby restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents that relate to the business practices or finances of any Defendant, including, but not limited to, any contracts, accounting data, correspondence, advertisements, computer tapes, disks or other computerized records, books, written or printed records, handwritten notes, recordings, telephone logs, telephone scripts, receipt books, ledgers, personal

and business canceled checks and check registers, bank statements, appointment books, copies of federal, state, or local business or personal income or property tax returns.

## PROHIBITION ON RELEASE OF CONSUMER INFORMATION

**XV.   IT IS FURTHER ORDERED** that Defendants, and each of their successors, assigns, members, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate or other device, are restrained and enjoined from disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), of any person which any Defendant obtained prior to entry of this Order in connection with any debt relief service, except as provided in Section IX of this Order.

## SERVICE OF THIS ORDER

**XVI.  IT IS FURTHER ORDERED** that copies of this Order may be served by facsimile transmission, personal or overnight delivery, or U.S. Express Mail, by agents and employees of the FTC or any state or federal law enforcement agency or by private process server, on Defendants or any other persons or entities that may be subject to any provision of this Order.

## DISTRIBUTION OF ORDER BY DEFENDANTS

**XVII.       IT IS FURTHER ORDERED** that within three (3) calendar days after service of this Order, Defendants shall provide a copy of this Order to each of their agents, employees, directors, officers, subsidiaries, affiliates, attorneys,

independent contractors, representatives, franchisees, and all persons in active concert or participation with Defendants.  Within five (5) calendar days following this Order, Defendants shall provide the FTC with an affidavit identifying the names, titles, addresses, and telephone numbers of the persons that Defendants have served with a copy of this Order in compliance with this provision.

## CORRESPONDENCE WITH PLAINTIFF

**XVIII.       IT IS FURTHER ORDERED** that, for the purposes of this Order, because mail addressed to the FTC is subject to delay due to heightened security screening, all correspondence and service of pleadings on Plaintiff shall be sent either via electronic transmission or via Federal Express to: Gregory A. Ashe, Federal Trade Commission, 600 Pennsylvania Avenue, NW, Room NJ-3158, Washington, DC 20580.  Email: gashe@ftc.gov; Telephone: (202) 326-3719; Facsimile: (202) 326-3768.

## RESERVATION OF RIGHTS

**XIX.  IT IS FURTHER ORDERED** that Defendants reserve all rights to assert any applicable rights and privileges in this action, including but not limited to Defendant Jeremy Nelson's privilege against self-incrimination under the Fifth Amendment.

## JURISDICTION

**XX.    IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

      **IT IS SO ORDERED**, this 15th day of October, 2012.

JOSEPHINE STATON TUCKER
United States District Judge